**M & A ELECTRIC POWER COOPERATIVE, a corporation, Plaintiff-Appellant,**

v.

**Robert A. NESSELRODT et al., Defendants-Respondents.**

**No. 9579.**

Missouri Court of Appeals, Springfield District.

May 3, 1974.

James C. Bullard, Dalton, Treasure & Bullard, Kennett, for plaintiff-appellant.

James E. Reeves, Ward & Reeves, Caruthersville, for defendants-respondents.

TITUS, Judge.

Plaintiff condemned an easement across a farm owned by defendant Gee for the purpose of erecting and maintaining an electrical transmission line. Among other defendants named relative to the Gee tract was W. L. "Cowboy" Ramsey, Jr., a tenant on the farm and also sheriff of New Madrid County. A jury returned its verdict to the Circuit Court of New Madrid County assessing defendants' damages at $15,240. Plaintiff's motion for new trial was denied and it appealed.

■ The penultimate and last points relied on in plaintiff's appeal brief are: "II The trial court erred in failing to excuse for cause possible jurors whose relationship with the parties would prohibit them from being impartial. III The trial court erred in failing to set aside the verdict and judgment herein because of the cumulative

effect of the intentional prejudicial inflammatory statements and arguments of counsel for respondent." Neither point preserves anything for appellate review and both violate the requirements of Rule 84.-04(d) V.A.M.R. which are mandatory. State ex rel. Zimmerman v. Quinn, 429 S. W.2d 7[2] (Mo.App.1968).

Point II does not identify the "possible jurors," it does not advise what "relationship" existed, and it does not identify which parties were concerned with the unknown relationship. The point does not attempt to illustrate how the failure of the trial court to excuse the unidentified "possible jurors" constituted error "against the appellant, materially affecting the merits of the action." Rule 84.13(b). In other words, plaintiff's second point does not undertake to explain "why" the relationship (whatever it might be) prohibited the "possible jurors" (if indeed it would) from being impartial. "Nakedly stating what the alleged errors are without elucidating 'why' they are errors neither satisfies the rule nor preserves anything for review." Freshour v. Schuerenberg, 495 S.W.2d 116, 118[7] (Mo.App.1973). In short, who the possible jurors were, what their relationship was, or "why" it may have prevented them from being impartial to some undesignated party, is left to conjecture and sheer speculation, and this court is not obliged to thresh the transcript or argument portion of appellant's brief to remove the guesswork inherent in the point by reason of plaintiff's failure to heed the rule. In re Estate of Barks, 488 S.W.2d 928, 930[5] (Mo.App.1972).

Although point III, supra, expresses displeasure with the trial court's refusal to set aside the verdict and judgment by reason of statements and arguments of defendants' counsel, it nowhere

identifies what the statements or arguments were nor labors to explain why plaintiff believes them to be intentional, prejudicial or inflammatory. Compliance with Rule 84.04(d) required plaintiff, at least, to specify the statements and arguments and to particularize why the allowance of such was prejudicial to it. Lawson v. Cooper, 475 S.W.2d 442, 447[7] (Mo.App.1972); Epperson v. Nolan, 452 S.W.2d 263, 267[7] (Mo.App.1970); Hays v. Proctor, 404 S.W.2d 756, 761[6] (Mo. App.1966). While point III preserves nothing for review, our inquisitorial nature prompted us to con the statement of facts and argument portions of plaintiff's brief to see what statements and arguments may have been made by defendants' counsel to deserve the vitriolic adjectives attributed thereto by appellant. All our judicial curiosity uncovered was another appellant faux pas when we found that plaintiff, contrary to the mandate of Rule 84.04(h), nowhere alluded to a single page reference in the transcript on appeal whereby an appellate court could find the condemned expressions. It was plaintiff's duty to point out distinctly in its brief the specific statements and arguments it had reference to, to state wherein and why such statements and arguments were improper, and to indicate where the statements and arguments could be found in the transcript. Because of plaintiff's utter failure to comply with either Rule 84.04(d) or 84.04(h), we decline to review point III. State v. Sibley, 411 S.W.2d 187, 190[8] (Mo.1967).

The only remaining point relied on by plaintiff is: "I The trial court erred in allowing the sheriff and/or the sheriff's deputies to summons [sic] the prospective jurors because the sheriff was a named party defendant in the case." This is predicated on § 58.190 RSMo 1969, V.A.M.S.,[1] and the evidence relative thereto

---

1. Sec. 58.190. "Every coroner, within the county for which he is elected or appointed, shall serve and execute all writs and precepts, and perform all other duties of the sheriff, when the sheriff shall be a party,

or when it shall appear to the court out of which the process shall issue, or to the clerk thereof, in vacation, that the sheriff is interested in the suit, related to or prejudiced against any party thereto, or in any

arose when, on the day of the trial and before the regular jury panel was called and sworn, it was determined by counsel and the special judge assigned to try the cause that several panel members would no doubt be disqualified because of their associations with plaintiff and customers of plaintiff. The following ensued: "The Court: . . . Well, I think we are already two short. I will tell the Sheriff to start looking. He will have to look some more before we qualify eighteen jurors. Mr. Sheriff, I am informed you are a tenant on the farm of Mr. Gee, is that correct? The Sheriff: Yes, sir. The Court: And the objection has been made to you picking up extra jurors which we will need in great numbers. Which [deputy] do you want to do that? The Sheriff: I better check to see who is here, Walter Ivy. The Court [to Deputy Sheriff Ivy]: You have been designated as Sheriff of the day to take care of the court. We are going to need a good many jurors apparently. You have an alternate list of jurors? . . . As near as possible get these people we are going to need from that list. . . . Any other preliminaries?" Thereafter the regular panel members were called, sworn and subjected to voir dire examination. All save three members of this panel were excused. Following this, 26 veniremen were called, sworn, examined on voir dire and counsel made their strikes, or scratches, as the process is known in Southeast Missouri. It was then that this occurred: "Mr. Bullard [for plaintiff]: We would like to ask prospective juror Howard be stricken for cause.[2] We have just learned he is an employee of Sheriff Ramsey who is not only a tenant on this farm and was originally named in the lawsuit and it was Sheriff Ramsey's office that picked up this pick-up juror. The Court: I don't want any inferences here. We called the Sheriff up here and he had nothing to do with it and you agreed that his deputy could call the

jurors. I don't want any inferences. Mr. Bullard: I did not mean to infer that. I did not find it out until just now."

■ The trial court was never presented with a motion to quash the jury panel, to disqualify the sheriff and his deputies from serving process in the case, or from summoning the regular jury panel. No objection of any character relative to the sheriff was made until the court determined that additional jurors would be needed. Although in its brief plaintiff lays claim to the objection obliquely referred to by the judge, the transcript does not indicate who made the objection. Proof as to this cannot be based upon a printed statement in an appellant's brief which has no other record basis. Gonseth v. K & K Oil Company, 439 S.W.2d 18, 25[12] (Mo. App.1969). Nevertheless, even if we grant plaintiff credit for the objection to the sheriff summoning the extra jurors, there is no indication that plaintiff objected to the deputy's services. Rather, as observed by the trial court, plaintiff agreed the sheriff's deputy could call the extra jurors that were needed, and plaintiff is now in no position to complain of alleged error in which he joined and acquiesced. Benjamin v. Benjamin, 370 S.W.2d 639, 643[11] (Mo.App.1963). In its first point, supra, plaintiff has seemingly additionally complained of the qualifications of the sheriff and his deputies to summon the original panel. To this we say: plaintiff was aware of the identity of the persons it named as defendants in the cause, one of whom was the sheriff. Therefore, "the proper rule is that the [plaintiff] should [have] present[ed its] challenge [to the jury panel or to the qualifications of the sheriff and his deputies to act in the case] at the first reasonable opportunity." State v. Parker, 378 S.W.2d 274, 279[2] (Mo. App.1964). Plaintiff did not challenge any juror in the polls because of anything in

---

wise disqualified from acting; in such case, the county court may require the coroner to give an additional bond."

2. When this request was made, juror Howard had already been struck by plaintiff via a preemptory challenge.

reference to summoning. Plaintiff did not make any objection to the summoning (if we credit it therewith) until after the regular jurors had been summoned, sworn and examined on voir dire; it did not indicate any objection to the summoning of the additional jurors by the deputy until after the strikes had been made. In view of plaintiff's acquiescence in the procedure followed and the tardiness of all action which should have been pursued before the trial proceedings were underway, we cannot see that any prejudice resulted to plaintiff or that the trial court erred in the manner suggested. Briefly stated, plaintiff's objection to the procedure followed came too late to be effective. Mannon v. Frick, 365 Mo. 1203, 1211, 295 S.W.2d 158, 165[11] (1956); State v. Parker, supra, 378 S.W. 2d at 279[3].

The judgment is affirmed.

HOGAN, C. J., STONE and BILLINGS, JJ., and DOUGLAS W. GREENE, Special Judge, concur.